IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-00284-FL

| | | |
|---|---|---|
| KRISTEANIEN THREATT GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 11, 17). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court declines to follow the recommendation of the magistrate judge, grants plaintiff's motion to remand, and denies defendant's motion for judgment on the pleadings.

## BACKGROUND

On April 20, 2012, plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning May 1, 2010. The application was denied initially and upon reconsideration. Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), who, after a November 20, 2014, hearing, denied plaintiff's claims by decision entered December 17, 2014. Following the ALJ's denial of her application, plaintiff timely filed a

request for review, and the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed a complaint in this court on May 23, 2016, seeking review of defendant's decision.

## COURT'S DISCUSSION

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 1, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: bipolar disorder, post traumatic stress disorder, and borderline intellectual functioning. However, at step three, the ALJ further determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium work, in that plaintiff needs to avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation; she is limited to frequent handling, fingering, and feeling with both upper extremities; she can perform "no more than simple routine repetitive tasks involving no more than simple work related decisions with few work related decisions and few work place changes"; and she is limited to occupations which require no more than occasional interaction with co-employees and supervisors and no interaction with the public. (Tr. 23). At step four, the ALJ concluded plaintiff was unable to perform any past relevant work as a collection clerk, head bank teller, or cosmetologist. However, at step five, upon considering plaintiff's age, education, work experience, and RFC, as well as testimony of a vocational expert ("VE"), the ALJ concluded that jobs exist in significant numbers in the national economy that plaintiff could perform such as laundry cleaner, laundry worker, and machine feeder. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B. Analysis

Plaintiff argues that the magistrate judge incorrectly determined that 1) substantial evidence supports the weight given by the ALJ to the medical opinion evidence; 2) the ALJ properly accounted for plaintiff's limitations in his hypothetical presented to the VE; and 3) the new evidence before the Appeals Council is not "new" and therefore remand is not warranted. The court addresses each argument in turn below.

1. Weight of Medical Opinions

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c); 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. Id. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." Craig, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.; see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted).

5

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: 1) whether the physician has examined the applicant, 2) the treatment relationship between the physician and the applicant, 3) the supportability of the physician's opinion, 4) the consistency of the opinion with the record,(5) whether the physician is a specialist, and 6) any other relevant factors. Johnson, 434 F.3d at 654 (citation omitted).

To aid in the court's analysis, below is a summary of pertinent medical opinions and the ALJ's assessment thereof:

    a.    Dr. Stephen Dudley, M.D.

Dr. Stephen Dudley, M.D., plaintiff's treating psychiatrist, from Cape Fear Valley Health System, originally diagnosed plaintiff with Bipolar I disorder, severe with psychotic features in January 2010, and reported seeing plaintiff on a monthly basis on December 18, 2012. (Tr. 25). Dr. Dudley also reported that he had advised plaintiff in May 2010 to resign from her work because of her problems interacting with the public and that he had been treating the plaintiff for 35 months and had advised her to stay out of the workforce for 30 of those months before he offered his opinion that she was likely to never be able to return to the workforce. (Id. at 25-26). Dr. Dudley stated that her medications were effective in controlling her on a daily basis so long as she was not presented with undue stress. (Id. at 25).

The ALJ also reviewed Dr. Dudley's responses to a "Psychiatric/Psychological Impairment Questionnaire" and "Mental Impairment Questionnaire," completed October 16, 2012, and May 27, 2014, respectively, where Dr. Dudley submitted a Global Assessment of Functioning ("GAF") score of 50 each time, and offered his opinion that her limitations would cause her to be absent from work

6

due to her impairments more than 3 times a month. (Id. at 26). Additionally, in these questionnaires, Dr. Dudley found the following marked limitations:

> the ability to maintain attention and concentration for extended periods,
> the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance,
> the ability to accept instructions and respond appropriately to criticism from supervisors,
> the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes,
> the ability to respond appropriately to changes in the work setting,
> the ability to travel to unfamiliar places or use public transportation,
> complete a workday without interruptions from psychological symptoms,
> perform at a consistent pace without rest periods of unreasonable length or frequency, and
> ask simple questions or request assistance.

(Tr. 362-363, 417). In the "Psychiatric/Psychological Impairment Questionnaire," Dr. Dudley reported plaintiff's primary symptoms to be blackouts, rage, tremors, paranoid delusions, manic episodes, and depression. (Id. at 26). On November 4, 2014, Dr. Dudley reported again that plaintiff was not able to function properly at work due to the types of medications she was required to be on, which at that time were Risperidone, Lithium, promethazine, propranolol, tramadol, valium, and Xanax. (Id. at 26)

The ALJ also reviewed at length Dr. Dudley's treating records from January 21, 2011, to January 23, 2013. As part of each of 9 records from January 21, 2011, to October 16, 2012, the following was included with no alterations:

> **MENTAL STATUS**
> APPEARANCE: Neat and clean. ATTENTION/CONCENTRATION Normal.
> SPEECH: Normal
> MOOD AND AFFECT: Normal
> THOUGHT PROCESSES: Normal.
> PERCEPTIONS: Undistorted.
> ORIENTATION: Oriented as to person, place, time and situation.
> MEMORY: Intact

JUDGMENT AND INSIGHT: Good.  SUICIDAL/HOMICIDAL RISKS:  No ideations, no plan, and no recent attempts.

(Tr. 342-357 and 454-455).  These treating records also included entries stating "Appetite is good" and "Energy is good."  (Id. at 342-357).  Generally, plaintiff also reported "Sleep is good."  (Id.). In the last three treating records, from November 20, 2012, to January 23, 2013, the entry for appearance includes "no acute distress" and "mood and affect" is changed from "normal" to "euthymic."  (Id. at 441, 446, and 450).  Additionally, for the last two treating records the "mental status" section is re-labeled as "Mental status examination" and is changed to include additional conduct entries, while the response to "Perceptions" is changed from "undistorted" to "No auditory or visual hallucinations."  (Id. at 441 and 446).[1]  The ALJ also noted these treating records include information given by plaintiff to Dr. Dudley such as "reporting a death and health issue in her family," "complained that her mother was stressing her out," and "home foreclosure."  (Id. at 27).

  b. Mary Ellen Lavoie, LCSW

Mary Ellen Lavoie, LCSW from Cape Fear Valley Behavioral Health, reported seeing plaintiff on three occasions in 2014 and that plaintiff was unable to function at a job "at this time due to severe mood instability."  (Tr. 26).  The ALJ also reviewed Lavoie's treating records from November 6, 2012, December 11, 2012, and December 27, 2012, which assessed plaintiff with Bipolar 1 disorder, severe, with psychotic features and post traumatic stress disorder traits with a GAF score of 55.  (Id. at 27).

---

[1]The court notes that the treating records of Mary Ellen Lavoie, LCSW, who treated plaintiff as part of a larger psychiatric team, including Dr. Dudley, also contain a similar "Mental Status Examination" section.  (See, e.g., Tr. 448).

c. Ernest Akpaka, Ph.D.

The ALJ then reviewed records from Ernest Akpaka, Ph.D., a licensed psychologist, who performed a consultative psychological examination of plaintiff at the request of the ALJ on May 23, 2014. (Tr. 27). Plaintiff's overall performance on testing to determine intellectual functioning were found to be borderline but "likely an underestimation of her abilities," because of "severe anxiety and hand tremors during testing." (Id. at 411). Dr. Akpaka found overall that plaintiff is "capable of understanding, retaining and following simple instructions" but that "[h]er mental ability to perform tasks that require sustained concentration and persistence and tolerate the stress associated with day-to-day regular work activity is significantly limited." (Id.). The ALJ stressed the wide range of daily activities plaintiff reported able to accomplish to Dr. Akpaka, although the court would note that plaintiff additionally reported that "she follows [a] strict daily routine and gets overwhelmed when that routine is disrupted." (Id. at 28 and 410). The examiner found a "severely anxious mood," frequent stuttering, and poor gross and fine motor coordination. (Id. at 410). Dr. Akpaka assessed plaintiff as having Bipolar I disorder and Borderline Intellectual Functioning and that the clinical interview "indicates the presence of clinically significant mood symptoms." (Id. at 28 and 411). Finally, Dr. Akpaka found plaintiff had the following "marked limitations": the ability to carry out complex instructions, the ability to make judgments on complex work-related decisions, and the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Id. at 407-08).

d. Weight of Medical Opinion Evidence Assigned by ALJ

The ALJ found that the treating records of Lavoie and Dr. Dudley consistently and repeatedly show the plaintiff's "attention/concentration, mood and effect, thought processes,

orientation were reported as normal with good judgment and insight and no harmful ideations and no adverse side effects from medications." (Tr. 28). The ALJ stressed there are simply no "references or reports of audio or visual hallucinations." (Id.). The ALJ found that his "detailed review of the treating office and clinical notes lead me to conclude that the extreme limitations asserted by Dr. Dudley and Ms. Lavoie are simply not at all consistent with the repeated and routine reports showing the claimant was consistently doing well and that her range of reported functional symptoms were generally and repeatedly considered to be normal over the extended course of treatment by Dr. Dudley." (Id. at 29). The ALJ noted that Lavoie's opinions are further limited by her limited role and number of visits with the plaintiff. (Id.) Returning to Dr. Dudley, the ALJ found that "[w]ith respect to the multiple opinions of Dr. Dudley, the fact that he repeated his opinions that the [plaintiff] was unable to work does not overcome the blatant inconsistencies between those extreme limitations and his own repeated clinical treating notes that are indicative of far less extreme limitations." (Id.).[2]

Regarding the GAF findings by Dr. Dudley, the ALJ noted, a GAF is a "medical opinion" as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), and must be considered with the rest of the relevant evidence. (Id. at 28). However, the ALJ found these reports to "have limited evidentiary value in light of the office and treating notes," and generally found that GAF reports are not sufficiently longitudinal, "do[] not predict prognosis or treatment outcomes," and "do[] not directly correlate to the severity requirements in our mental disorders listings." (Id. at 28-29).

---

[2]The court notes that the state medical consultant also gave little weight to the opinions of plaintiff's treating physician, Dr. Dudley, for not being internally consistent. (Tr. 89).

To summarize the above, the ALJ discounted the opinions of plaintiff's treating physician for one reason stated several different ways, that Dr. Dudley's opinions were inconsistent with his treating records.

The ALJ did not properly weigh the opinions of Dr. Dudley, plaintiff's treating psychiatrist, and failed to give "good reasons" for the weight assigned. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3] The ALJ's sole reasoning for discounting Dr. Dudley's opinions, that Dr. Dudley's opinions were not supported by his own treating records, is not supported by substantial evidence. As an initial matter, Dr. Dudley's treating records that plaintiff's appearance, speech, mood, thought processes, perceptions, orientations, memory, judgment, appetite, and energy were "normal" during her appointments are not necessarily inconsistent with 1) his responses to the October 16, 2012 "Psychiatric/Psychological Impairment Questionnaire," finding multiple marked mental limitations; 2) his December 18, 2012 extensive narrative concerning his treatment of plaintiff and her mental limitations ("Mrs. Gregory continues to have difficulty functioning in public as she experiences anxiety, anger, and rage based on the situations and types of stress she is confronted with . . . . Her current medications are effective in controlling her on a daily basis so long as she is not presented with any type of undue stress that could potentially send her into a psychotic episode") (emphasis added); 3) his responses to the May 21, 2014 "Mental Impairment Questionnaire," finding multiple marked mental limitations; and 4) his November 4, 2014 letter listing plaintiff's diagnosis, medications, and offering his opinion that due to the medications she is required to be on and her mood instability, plaintiff is not able to function properly at work. (Tr. 359-366, 368-369, 414-18,

---

[3] The court's holding departs from the recommendation of the magistrate judge because the magistrate judge found that the ALJ did not err in not assigning Dr. Dudley and Dr. Akpaka's opinions less than controlling weight. In plaintiff's objections, plaintiff objected on the grounds that the ALJ's decision did not take into account adequately the medical opinions in the record.

and 467); see, e.g. Ware v. Astrue, No. 5:11-CV-446-D, 2012 WL 6645000, at *3 (E.D.N.C. Dec. 20, 2012) (noting that "[t]he reasons that the ALJ offered--that the claimant is motivated for treatment and responds positively to medication--are not inconsistent with [a treating physician's] opinion").

Further, to the extent that the ALJ discounted Dr. Dudley's opinion because his treatment notes describe plaintiff as "normal," the record does not support such a finding when turning to the narrative portion of Dr. Dudley's treatment notes. Here, the treatment notes describe plaintiff on multiple types of medications to treat bipolar disorder, anxiety, and insomnia, having some good days and facing multiple stressors other days, with Dr. Dudley adjusting medication as needed. (See, e.g., Tr. 346 ("She reports that Lunesta did not help at all; therefore we will stop that and add Phenergan. Other than that, her mood symptoms are good."); 348 ("The patient asked if I could increase [her] Xanax because it is not working effectively enough and also lithium . . . I am going to honor her request . . . She is reporting problems sleeping, so I will add Lunesta"); 350 ("The patient reports that her grandmother just died yesterday and her mother is in the hospital suffering an asthma attack and her husband is being deployed next week. She reports that the medications are working fairly well but requests additional Xanax secondary to all of her psychosocial stressors."); 352 ("The patient recently stopped taking the Geodon and the Risperdal and reports that she feels much better. The patient is currently on lithium . . . Valium . . . and trazodone"); 356 ("The patient reports that she still has some auditory hallucinations, which have decreased and she wants to increase her Risperdal. Also, her blood pressure is low at 80/50, so she wants to stop the propranolol and she reports that causes some dizziness and lightheadedness as well.").[4]

---

[4] This record evidence directly contradicts the ALJ's finding that Dr. Dudley's office and treating notes contain no reports of audio or visual hallucinations. (See Tr. 28).

Accordingly, the ALJ has failed to explain sufficiently evidence conflicting with his assessment of Dr. Dudley's treatment notes. While Dr. Dudley's treatment notes do include a section that appears to be standard for this psychiatric group's forms and are marked as "normal," this section appears to have been rarely altered by Dr. Dudley[5] and the notes detail in narrative form the significant amount of psychiatric medications taken by plaintiff and Dr. Dudley monitoring and adjusting of these medications over time in response to plaintiff's complaints concerning the medications and psychosocial stressors. Here, while the ALJ attempted to show that Dr. Dudley's opinion is not supported by his treatment notes, this finding requires additional explanation to account for conflicts in the evidence.[6]

The ALJ also appears to discount the opinion of Dr. Akpaka, but does not explain his reasoning, stating only, following a review of Dr. Akpaka's opinion evidence, that "lacking any functional evaluations or opinions from any treating sources, the reports and conclusions from the consultative and the non-examining sources are afforded appropriately limited weight." (Tr. 28).

---

[5]The ALJ also discussed Lavoie's treating records. Although Lavoie is not an acceptable medical source, she is a licensed clinical social worker who treated plaintiff in her professional capacity as part of a larger psychiatric care team, which included Dr. Dudley. See S.S.R. 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (Evidence from "other sources," such as licensed clinical social workers, may be used "to show the severity of a plaintiff's impairment(s) and how they affects the individual's ability to function"). The ALJ discounted Lavoie's notes for the same reason he discounted Dr. Dudley's, in that both sets of treatment notes contain a "mental status" section where plaintiff is repeatedly described as "normal." Although it appears Dr. Dudley rarely altered this section of his treatment notes, Lavoie did, recording on December 27, 2012, for example, an anxious mood, tangential thought process, and limited judgment, in addition to a narrative concerning Lavoie and plaintiff's session. (Tr. 443-44).

[6]Additionally, the ALJ "failed to adequately consider the factors for determining the weight of medical opinions." Guthrie v. Colvin, No. 4:13–CV–57–FL, 2014 WL 2575318, at * (E.D.N.C. June 9, 2014) (adopting memorandum and recommendation determining that the ALJ's reasons for assigning certain weight to medical opinion evidence were not supported by substantial evidence in the record and noting that the ALJ failed to adequately consider the factors laid out in the regulations for weighing medical evidence). At most, here, the ALJ only considered the consistency and supportability of Dr. Dudley's opinion. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c) (listing six non-exclusive factors to consider in weighing a medical opinion when the ALJ determines it is not entitled to controlling weight); White v. Colvin, No. 5:13-CV-853-FL, 2015 WL 545447, at *9 (E.D.N.C. Feb. 10, 2015) (adopting memorandum and recommendation to remand a case where the ALJ "only considered the consistency and supportabililty" of doctor's opinion evidence).

If this sentence is about Dr. Akpaka's report, then it appears that the ALJ is stating that because Dr. Akpaka did not reference any functional evaluations or opinions from any treating sources, the opinions presented in Dr. Akpaka's report are given limited weight. However, this is not clear; additionally, Dr. Akpaka's report notes Dr. Dudley's December 18, 2012 narrative report concerning plaintiff's inability to return to the workforce. (Id. at 409). Accordingly, the court finds that the ALJ's decision to discount the opinions of Dr. Dudley and Dr. Akpaka requires more explanation and that the matter should be remanded for further consideration of the opinion evidence.

> 2. Hypothetical Presented to Vocational Expert

Plaintiff argues that the ALJ presented a legally insufficient hypothetical to the VE, citing the Fourth Circuit's opinion in Mascio v. Colvin, 780 F.3d 632 (4th Cir.).[7] In Mascio, the Fourth Circuit held that an ALJ "does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work," noting that "the ability to perform simple tasks differs from the ability to stay on task." Id. at 638.

Plaintiff argues that the hypothetical offered by the ALJ to the VE did not account for plaintiff's moderate difficulties in concentration, persistence, or pace. Here, the hypothetical offered by the ALJ included limitations "to occupations which require no more than simple, routine repetitive tasks involving no more than simple work-related decisions with few work place changes." (Tr. 62). As with the hypothetical in Mascio, this hypothetical does not account for plaintiff's limitations in concentration, persistence, or pace, unless the ALJ in his decision sufficiently "explain[ed] why [plaintiff's] moderate limitation in concentration, persistence, or pace

---

[7]The magistrate judge determined that the limitations in the hypothetical to the VE comport with Mascio and cited cases that are distinguishable. The court departs from the reasoning of the magistrate judge for the reasons stated in the text above.

14

at step three does not translate into a limitation in [plaintiff's] residual functional capacity." Mascio, 780 F.3d at 638.

The ALJ failed to so explain here. The ALJ referenced plaintiff's moderate difficulties in concentration, persistence, or pace, multiple times, noting that a state medical consultant found plaintiff had moderate difficulties in maintaining concentration, persistence, or pace and that plaintiff's treating physician found plaintiff had marked difficulties in maintaining attention and concentration for extended periods and generally marked limitations in concentration and persistence. (Tr. 24, 26). Nevertheless, the ALJ stated that the "treating source reports consistently indicated [plaintiff] was having no problems in this area," but "once again affording her the benefit of the doubt I have concluded that this level of limitation is appropriate." (Id. at 22). This is not an explanation of why plaintiff's moderate limitation in concentration, persistence, or pace does not translate into a limitation in plaintiff's RFC. Put differently, the ALJ did not then discuss how "simple," "routine, repetitive" tasks involving "simple work-related decisions with few work place changes" account for plaintiff's difficulties in concentration, persistence, or pace. None of these restrictions describe limitations in plaintiff's concentration ability over a period of time, the ability to persist in a task, or the capacity to remain on pace over the course of a workday.[8]

The court finds the ALJ's hypothetical does not comport with Mascio and plaintiff's mental restrictions.

---

[8] Plaintiff also argues that the hypothetical offered by the ALJ to the VE did not account for plaintiff's marked difficulties in plaintiff's social functioning, where the hypothetical limitation included occupations that "require[s] no more than occasional interaction with co-employees and supervisors, but no interaction with the public." (Tr. 23). The court notes that no discussion is offered by the ALJ explaining why these restrictions, precluding plaintiff from interacting with the public but not her coworkers and supervisors, account for plaintiff's marked difficulties in social interaction.

3. New Evidence before the Appeals Council

After the ALJ issued his decision, plaintiff submitted to the Appeals Council a June 4, 2015, assessments by Dr. Moore, licensed psychologist. (Tr. 473-80). The Appeals Council denied review without comment on this evidence. (Tr. 1-3 and 5). Dr. Moore reviewed the psychiatric treatment records from Dr. Dudley from the period at issue as well as the report from the Administration's examining psychologist Dr. Akpaka. (Id.). Dr. Moore also performed a psychological evaluation of plaintiff and completed a mental impairment questionnaire, concluding that plaintiff has moderate to marked limitations in 22 out of 23 mental categories, and completed a clinical interview and performed a Reynold Intellectual Assessment Scale in order to determine cognitive ability. (Id.). Dr. Moore's overall conclusions and recommendation are as follows:

> Ms. Gregory has diagnoses of bipolar disorder and post-traumatic stress disorder for which she has been treated for at least 5 years. Medications appear to moderate some symptoms, but she continues to have symptoms of both disorders that interfere with her ability to meet the normal demands of adulthood. Test results here indicate that cognitive abilities are variable but overall are below average. In addition, her ability to retain information and to learn new information is very weak. These symptoms and related limitations in Ms. Gregory's ability to work have been evident at least since May 2010 when she last worked. It is expected that [s]he will continue to have this disability for at least another 12 months and most likely longer. Continued therapy and psychiatric care are recommended.

(Id. at 475). Plaintiff renews her argument that remand is warranted based on this evidence.

"The Appeals Council must consider evidence submitted with [a] request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc) (internal quotation omitted). "Evidence is new within the meaning of this section if it is not duplicative or cumulative." Id. at 96.

"Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.

Here, the magistrate judge found that the evidence submitted by plaintiff is not new, in that the opinions expressed therein are identical to those offered by Dr. Dudley. Although Dr. Moore's report does corroborate Dr. Dudley's opinions, that does not disqualify the report from being "new" under the Wilkins test. See Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011) (remanding to consider new evidence where "other record evidence credited by the ALJ conflicts with new evidence" but new evidence submitted from treating physician "corroborates the opinion of Dr. Weissglass, which the ALJ had rejected"). Dr. Moore completed a new evaluation of plaintiff and conducted a new review of past records. Thus, the psychological assessments submitted by Dr. Moore mirror the opinions of Dr. Dudley and are new and material. Finally, the timeliness prong has been met because the evidence relates to the period before the ALJ's decision. (See Tr. 475 ("These symptoms and related limitations in Ms. Gregory's ability to work have been evident at least since May 2010 when she last worked"); Wilkins, 953 F.2d at 95.

Accordingly, the court holds that the new evidence submitted on plaintiff's administrative appeal should have been evaluated as new and material evidence by the Appeals Council. Further explanation is required by the ALJ in light of this new evidence together with Dr. Dudley's opinion and the rest of the evidence in the record.[9]

**CONCLUSION**

Based on the foregoing, upon de novo review, and upon considered review of the record, the court REJECTS the recommendation of the magistrate judge (DE 19), GRANTS plaintiff's motion

---

[9]Because of the above holdings of the court, the court need not address plaintiff's remaining argument concerning the ALJ's assessment of her credibility.

for judgment on the pleadings (DE 11), DENIES defendant's motion for judgment on the pleadings, (DE 17), and REMANDS this matter to defendant, pursuant to sentence four of 42 U.S.C. § 405(g), for further consideration in accordance with this order. The clerk of court is DIRECTED to close this case.

      SO ORDERED this the 20th day of September, 2017.

                                          LOUISE W. FLANAGAN
                                          United States District Judge